You will call our second case of this morning, United States v. Harris, number 17-1861. And we have Ms. Freeman and Mr. Zosmer. Good morning. Good morning, Your Honors. May it please the Court, my name is Ariana Freeman. I represent Marc Harris. And with the Court's permission, I'd like to reserve three minutes for rebuttal. That's fine. Mr. Harris has provided the Court with several reasons why none of his convictions for Pennsylvania robbery or aggravated assault qualify as ACCA predicates. But in order for Mr. Harris to win, the Court need only determine that two of those prior offenses do not qualify. And I'd like to suggest to the Court the most straightforward path of getting to that conclusion. The first holding would be that applying Mathis for a screw robbery is a single, indivisible offense that does not qualify under the Court's laws. And if you use Mathis, your Mathis completely abrogates Blair. Is that what you're saying? Mathis abrogates Blair, yes. And Blair concluded that because certain portions of the statute were disjunctively phrased, it was clearly just indivisible and Mathis abrogates that. And the second conclusion is that aggravated assault cannot qualify as a crime of violence because it punishes crimes of omission and not crimes that categorically require violent physical force between concrete bodies, such as Johnson 2010 requires. Which one of the factors in Mathis supports finding that the first-degree robbery statute specifies means and not elements? Well, I submit that in Mathis, we're told to look at state law and how Pennsylvania interprets its own statutes. And we really have a decision that we cited in our briefs that answers this question quite clearly. And that is the prosedemo case. In that case, it's prosedemo, P-R-O-S-D-O-C-I-M-O. Prosedemo, perhaps I'm pronouncing it wrong. In that case, the Pennsylvania Supreme Court, again the state's highest court, looked at an instruction for first-degree robbery. And that instruction, just as the standard jury instruction provides, stated that there are two elements to the offense. The theft element and then one of the aggravation means enumerated in subsections one through three. And in that case, the Supreme Court said that that was an accurate portrayal of the law. The jury was accurately informed. And it approved of using those suggested jury instructions. So again, we've argued to the court that the jury instructions make this very clear that there are two elements. Theft and then either one, two, or three for aggravation. That has been permitted in United States v. Steiner. And it's also been approved directly by the Pennsylvania Supreme Court. But we have a number of other factors as well that support indivisibility. But I submit to the court that it's not even a close call. And it certainly, Taylor's demand for certainty would not permit a court to conclude that this is an indivisible statute. I'm sorry, that this is a divisible statute. It is a single offense. What about Bozine? Bozine is about the recklessness element, the mens rea element. So, Your Honor, the question is that our recklessness arguments go really to all three offenses, but primarily to second degree robbery and to aggravated assault. And the Supreme Court has said that in certain contexts, well, why don't you tell me what the Supreme Court said and whether we should go that far in this case. Certainly in domestic relations issues, recklessness can qualify as a use of force. Yes, and Bozine in the Supreme Court was interpreting the misdemeanor crime of violence that is defined in 921A, 33A. The definition of a misdemeanor crime of violence is that it must have as an element the use or attempted use of physical force. It does not state against the person of another, which the ACCA does. The Supreme Court has instructed courts in Leocal and in Johnson 2010 that context matters. You can't take words in isolation. We have to look at the definition of physical force in the ACCA context. And there it would be a comical misfit to take the common law force definition to apply it to the ACCA. Isn't ACCA's language very similar to that of the domestic violence provision in Bozine? Well, the statutory language is different in that ACCA requires the use, attempted use for threatened use of physical force against the person of another. And the misdemeanor crime of violence definition does not require that. You're saying in this particular statute it doesn't require, doesn't have use of force, or does have use of force against the person? Is that what you're trying to tell me? The misdemeanor crime of violence statute does not contain the phrase against the person of another, while the ACCA's definition does. What do you make a footnote for? Is that canon, Bozine? It certainly does. It's the court explicitly limiting its ruling to the misdemeanor crime of violence context. And that, again, it notes that the courts of appeals have consistently refused to interpret Section 16 in a way, in that same way. Is that still true? This court certainly has. Well, are there other courts of appeals that have gone down a different road? Since Bozine? Since Bozine, there's a split among the circuits in whether to extend Bozine. It's a very big split, though, isn't it? I mean, the 5th, the 6th, and the 10th circuits have adopted the Bozine rationale. But only, if I've got this correct, the 1st has gone the other way. I believe, Your Honor, there's at least one other circuit, and it may be the 8th. And actually, the 8th circuit is split within itself on whether to, and when to extend Bozine. Fog and fields, right. The weight of authority, though, seems to accept that you can commit an offense for purposes of enhanced sentencing, reckless conduct. There certainly is some authority that points in that direction. But I submit to the court that there are several reasons why it would not make sense to do so. And, in fact, in this circuit, it would require overturning 25 years of precedent that recklessness offenses do not qualify under the ACCA. So what case should we look to in this circuit? Which case should you look to from among the other circuits? In this circuit. Oh, in this circuit. Well, it starts with, we have Tran, we have Propol, we have Oyobanji, we have Chapman very recently, just reiterating this. What about Otero? I'm sorry? Otero. Is that still good law? It absolutely is, in that it limits categorical crimes of violence to offenses committed through intentional force, yes. Well, the problem is that Bozine is of very recent vintage. Does it not overrule some of our current precedent? It does not. In fact, footnote 4 states that it applies only to that misdemeanor crime of violence definition and does not overrule the circuits. I wonder if it applies in the context of a misdemeanor. Why shouldn't we limit it to that level of offense? It's still referring to conduct. It's still referring to conduct in the context and circumstances. One of the contexts here would be you're dealing with a felony. Yes. In fact, in Johnson 2010, the Supreme Court said that when you're talking about, you take the word violent and you place it next to the word felony, that really further emphasizes that we're talking about a category of violent physical force between concrete bodies. Also, there is a lengthy discussion in the Bozine opinion itself about the intent of that 922G9 in broadly encompassing misdemeanor offenses that are in the category of domestic violence. We don't have that here. In ACCA, also, we're talking about increasing the mandatory minimum and imposing a life statutory maximum. Again, this is very different from the firearms disability that 929G9 imposes. How many predicates does Harris, from your standpoint, have? He has one, and that's the drug offense that we're not contesting in this case. What about the robbery, the armed robbery? Not armed robbery. Struggle armed robbery. Mr. Harris has two robbery convictions. There's a first degree robbery and a second degree robbery conviction. I started off by- I'm sorry. Let me go back. He pled guilty. His very first offense a long time ago. Okay. I'll step back even more. Mr. Harris has the drug conviction. He has a 1994 plea to first degree robbery that the government concedes does not qualify because there is no information in the Shepard documents stating which subsection he pled guilty to and subsection three does not categorically require the use of force. He did plead guilty to threatening someone with a stick, perhaps, or something like that. That is the second degree robbery. We argue in our briefs and maintain our argument regarding recklessness in second degree robbery. But you wouldn't commit such an offense recklessly, would you? You certainly can. You can recklessly threaten to strike somebody with a stick? Well, Your Honor, I would suggest that we can't look at the stick because that would be looking at the real world facts, and that would be somewhat akin to the modified factual approach that Mathis tells us we're not allowed to conduct. Of course, that's been one of the big complaints that people have given with regard to the categorical approach that it doesn't allow judges, especially sentencing judges, to look at real world facts. I understand those complaints, but it is undisputed at this point that the categorical approach is the law of the United States Supreme Court and must be applied in this case. So we can't look at the fact that a stick was used in this particular case. We have to look at the least culpable facts hypothetically necessary to convict under the statute. Under the second degree robbery statute that we were just discussing, Judge Fontes, one can be reckless as to the infliction of the injury, and one can also be reckless as to whether his actions would be interpreted as a threat. And again, we have provided examples, both hypothetically and in actual Pennsylvania case law, that show that intent is not required. So at the end of the day, this all turns on interpretation of Voisin. Your Honor, I would submit that the court does not need to address Voisin in order to find the first jury. If we did go down that road. Mr. Harris could win on the Voisin piece, where this court finds that Voisin does not overrule 25 years of Third Circuit precedent with regard to mens rea. If we went the other way, he loses. If you went the other way, when you were to extend Voisin. As many of the circuits have, you lose. Your client loses, correct? That would be correct, but it would also, I suggest, require an en banc opinion. No, I don't think so. I mean, if we apply Supreme Court doctrine, under our rules, I think, we can just go ahead and apply what the Supreme Court says without going en banc. Why would you have to go en banc in order to apply what the Supreme Court has said? You would not have to go en banc if the Supreme Court's opinion directly abrogated this court's precedent, and we know from footnote four that it does not. You're saying there's no real clarity in the Supreme Court as to whether reckless behavior can constitute a predicate defense. Outside of the context of the common law definition of force and the misdemeanor crime of violence, that's exactly what I'm saying. And, in fact, we have Supreme Court authority that says this interpretation of force from the common law context should not be interspersed into the ACCA because it would create a comical misfit. Right. Good. Mr. Zausman, I'll get you back in rebuttal. Thank you. Good morning, Your Honor. May it please the Court. Robert Zausman on behalf of the government. Hard to know where to start. This case presents the greatest hits. Is our holding in Blair still good law? Yes, it is, Your Honor. Because? Because Blair followed DeCamp, which set forth the notion of divisibility. Didn't Mathis clearly abrogate that? No, it didn't, Your Honor. And this Court has said, and other courts have said, that Mathis is just an explanation of DeCamp. It's not a break in the law. This Court, faced with DeCamp, said that the first-degree robbery statute is, quote, obviously divisible, end quote, and then proceeded to apply the modified categorical approach. But in Mathis, the Court is saying disjunctive phrasing does not necessarily mean divisible. It does say that. But, of course, there's much more that we look at. And in looking at the statute as Blair did, and as I'm happy to do independently today, it's very clear that the first-degree robbery statute states different elements and different types of robbery. I've got the statute in front of me. Let's look at it. A person is guilty of robbery if, in the course of committing a theft, he inflicts a serious bodily injury upon another, one. Or three, commits or threatens immediately to commit any felony of the first or second degree. You're saying it looks like this is different ways to commit a first-degree robbery, and you're saying no. Well, did the jury instructions clear that up? Did you hear? In this case, in the case that we're dealing with, the F1 robbery, that's an issue, the plea colloquy did clear it up. Did the jury? Well, okay. You're right, you're right. And what the court said to the defendant. The plea colloquy said it was one or two, right? It did, which, of course, under Mathis is proof of divisibility. When we take that, quote, peek at the records, and we see that really only one and two were charged in this case. I have a short answer and a long answer to what Your Honor is asking. The short answer is that subsection 3 is clearly a different type of robbery that's set forth in one or two, and therefore, as this court said to Blair, obviously must involve elements. If I might take a moment and give the longer answer that explains it. Okay. Subsection 3 is a very unusual provision, and, in fact, it appears in the robbery statutes of only three states. Yes, it certainly does. I have not come across it too often. Right. I mean, one of the places you'll come across it are in New Jersey and Montana. And in New Jersey, this issue doesn't present because the legislature added other factors to make it first degree versus second degree, such as the fact that this doesn't come up. Pennsylvania is unique, and the way this happened, Your Honor, and I'm ultimately getting to why this has to be divisible. The way this happened is that the model penal code was passed in 1962, and it included this language verbatim. Subsection 3 is a departure from the common law of robbery. The common law of robbery is simply taking property from another through threat of force or fear. The state legislatures in addressing the model penal code, if you look at it, 47 states rejected that addition by the model penal code. Pennsylvania adopted the model penal code wholesale in 1972, and thus here we have subsection 3. And it creates a strikingly new type of robbery, which is that you can commit a robbery, according to this, by committing or threatening to commit a nonviolent felony. There is no other state in which that's true. And not only that, it's not even true in Pennsylvania, because we've looked through all of these records that defense has provided and everything we've been able to look through, and no one has identified a single example of a Pennsylvania court ever prosecuting a defendant for committing a robbery by threatening to commit a nonviolent felony. There's no such case. The reason there's no such case is because that's extortion. That's not robbery. Extortion is theft that does not involve violence. But aren't we told under the categorical approach to limit ourselves to the statute? Well, that's true, but when we look at this then and we see that this type of, quote, robbery, which only exists in Pennsylvania and actually is not even charged in Pennsylvania, when we see that this type of robbery is so drastically different from the law of robbery that applies universally in the United States, how can one say anything but that these are different elements and not different means? I understand that Harris could not be convicted or we cannot count his involvement in one small, two eyes, that is, threatening another with the intention of putting him or her in fear. He would not have committed that offense. Well, he pled guilty in the case we're talking about to violating 1 and 2, to inflicting bodily injury and threatening bodily injury. Would his plea to 2 be a predicate offense? Absolutely, and the defense acknowledges that also. I thought you were criticizing that. No, I'm not. 1 and 2. That should be extortion. Not at all. When you threaten someone with immediate serious bodily injury, that's violence and that's robbery under the traditional definition. So 1 and 2, and this is what every other state preserved, even those that adopted the model penal code. 1 and 2 is traditional robbery, and the defense acknowledges that. The only way that they argue that no one committing a robbery, an F1 robbery in Pennsylvania, has committed an act of violent felony is by saying we have to sweep in Section 3 as well, this strange, unique provision that's not actually charged. There's a reason also when you think about it. I spend so much time thinking about this because it's just so strange. When you look at it, there's a reason that Mr. Harris and so many other defendants in Pennsylvania are only charged with 1 and 2. The 3 can be committed without the use of force. That's correct, Your Honor. And that's what makes it so different as a matter of element, and that's also why, by the way, the Pennsylvania sentencing guidelines treat it as a much less serious offense. The offense gravity score, another thing that Mathis tells us to look at, the offense gravity score is significantly lower for a violation of Subsection 3 than it is for Subsections 1 and 2 because it can be a nonviolent offense. It actually never gets applied, as I said, because it's never actually charged independently. If you think about it, there's a reason that Harris is not charged with Subsection 3, and that is because the charge would be nonsensical. He committed a robbery. And so to violate Subsection 3, the allegation would have to be you committed a theft, you took money by committing a robbery. It's completely circular. Robbery is theft by committing a robbery, or robbery is theft by threatening to commit a robbery. It makes no sense. And that's the reason that we only see 3 appear in the Pennsylvania cases, either where it's just thrown in, there's just a wholesale listing of everything, or it's just left out completely. Let's go to, we'll come back to this, and obviously before you sit down, we'll talk about Boise. Let's go to the second-degree robbery. Isn't the second-degree robbery essentially one little lie and two little lies? Is it two little lies? One and two. It's a little different because it's only bodily injury instead of serious bodily injury. But it's still, but it's. . . It is, and so this is Subsection 3. And then you get hung up in what does it mean, what is the mens rea, and you have to look to the statute, which is what, 302C or something? That's right. And again, I don't think we're hung up. There are two objections that the defense has raised. One is that bodily injury does not equate to physical force. This court rejected that in Chapman, so that's a settled issue. And their other argument then is mens rea, that supposedly you can inflict bodily injury recklessly, and therefore this doesn't qualify. That's the Boise issue. That's what Tran said, in effect. Right, and that's the Boise issue then, is recklessness. So how does Boise overrule Tran or Terrell at all? Well, Boise gives us the definition of recklessness. And let me first say that Ms. Freeman, in her argument, says it would be comical to import an interpretation of the domestic violence statute into ACCA, and by definition the career offender provision as well. That's exactly what this court did in Chapman. Chapman took a different Supreme Court decision involving the same domestic violence statute, which is the Castleman decision. In Castleman, the Supreme Court took the domestic violence statute and defined what physical force means and said bodily injury equates to physical force. When this issue came before the court, defense made the exact same argument. You can't take this domestic violence decision to define what physical force means in the identical language in ACCA and the career offender provision. That becomes a juxtaposed point about what does footnote 4 mean in Boise. Well, footnote 4 is a traditional Supreme Court statement that we're deciding the issue before us and not issues that haven't come before us. That, of course, does not relieve this court of its obligation to read what the Supreme Court is saying and decide how it applies to the next case in front of it. And what has to be read in Boise, just like this court in Chapman looked to Castleman's discussion of physical force, what has to be looked at here is what does Boise say about recklessness. It's not about domestic violence. The Supreme Court has given us a definition and a discussion of recklessness. It says that recklessness is where somebody acts, so you have an actual physical act, with conscious disregard. In other words, they know elsewhere... They also give examples or hypotheticals where you could be reckless and not necessarily have the statute apply under 922G9. The only examples that the defense has raised, which is quite stunning to me, the only argument they've raised with regard to aggravated assault in particular is this notion of starving a child to death. The argument that's being presented to this court over and over again is that no one in Pennsylvania, categorically, who commits aggravated assault has committed a violent crime because you could violate the same statute by starving a child to death. That's the only example that they've come up with and that they repeatedly cite. And as we've explained over and over again, you can't starve a child to death without physical force, as the only case they discuss called Thomas vividly illustrates. But doesn't Chapman also stand for the proposition that the use of force has to be intentional use of force? There is a sentence in Chapman that says that. The issue was not before the court in Chapman. It's dictum in the extreme. It's only looking at third-circuit cases. Voisin was not briefed to the Chapman court because it wasn't relevant. The issue in Chapman is the federal statute involving a threat to injure, a crime of violence, and the defining issue was whether threat to injure means threat to use physical force. So when you think of the difference in the language in the statutes, the Voisin statute, which is use of force, as opposed to the ACCA statute in the career of criminal statute that says use of force against another. Again, it made no difference to Chapman. It shouldn't make any difference here. The Supreme Court in Castleman defined force as meaning a threat or an actual causation of power to injure. It made a difference to Judge Kethledge in writing Harper had he been able to have a clean slate and not be bound by the prior Sixth Circuit case. Well, I wish all of us had a clean slate. There's much that can be written in this very odd era. We're acting based on the Supreme Court decisions, and Voisin presents a very clear definition of recklessness in concluding that it is embraced within the, quote, use of physical force, the exact same language. The one thing, and you know this better than I, but it's the one thing that's always repeated to me by people who practice actively in the appellate area, especially before the Supreme Court, is in most courts footnotes aren't that important. In the Supreme Court, they're very important. Read them carefully. They're often more important than anything else, and footnote four here says essentially there is, the only slate we're writing on is 922 G9. That's it. Now, we may have some words that tell you what recklessness is, and you've got some circuits going your way, but you've got, had the person not died, you would have had the First Circuit against you, and you would, if you had the panel with Judge Kethledge, you would have had that panel against you. So the Eighth Circuit looks like it's an intra-circuit conflict. The Sixth Circuit looks like there's an intra-circuit conflict, and it looks like this is not going to end here. The First Circuit is against us, by the way. There was a later precedential decision that adopted the reasoning of the panel decision that was vacated. Yes, there is a split. The heavyweight authority favors our position. Footnotes do matter, and certainly if we had a Supreme Court. Well, it's four to two, and of the four, two of them have intra-circuit. Yes. Well, that's true. I'm not saying that it's a slam dunk, but we do believe that. So it's like two to two, maybe. The definition of recklessness in voicing, we believe, squarely supports our position. As for the footnote, of course Supreme Court footnotes matter, and if this footnote said, we acknowledge that in the ACCA context people have said recklessness is not enough, and we agree, even though that would be complete dictum in a domestic violence case, it would have tremendous weight coming from the Supreme Court. It's not what they say. It simply says, we see there's this other body, we're not addressing it. Did voicing start with, was it an application for a permit to get a handgun? Is that accurate? That's right. It's possession of a handgun by somebody who has been convicted of a domestic violence offense. Doesn't the court take pains to highlight the dangers of having a gun in a domestic violence context, or someone who had committed domestic violence? It did. So voicing and Castleman before it are addressing different issues. The domestic violence statute, what Castleman is important about, is there's a part of Castleman that says, we do read this domestic violence statute differently from ACCA, and that's in the question of what's the quantum of physical force that's required. In the ACCA context, the Supreme Court held in Johnson 2010, it has to be violent force. And in Castleman, the Supreme Court goes through the domestic violence history specifically and says that's not what physical force means here. It can be slight force. And to explain that, it then goes into the history that your Honor is referencing regarding why Congress is focused on domestic violence. But then it has before it, and voicing and this court in Chapman, has before it other aspects of the domestic violence statute that match ACCA. And this court in Chapman takes from Castleman the discussion of what is the physical force, the bodily injury equal physical force. And it rejects the exact argument that your Honor is suggesting, which is that, well, that's just domestic violence. Because, no, in that part of the opinion, the Supreme Court was not concerned with the unique aspect of domestic violence. It was concerned with what is physical force. And it's the same voicing. If you look at voicing, the gravamen is a discussion and a directive from the Supreme Court about what recklessness means. And what it means is an act taken with a conscious disregard of the risk of injury, matching, by the way, the Pennsylvania definition. And that is, the Supreme Court says, a use of physical force. And there's no reason to treat this any differently. But isn't it true that it's the use of physical force in the context of domestic violence, and Congress is ready to capture a different audience, so to speak, than the ACCA audience? Again, that's not the full explanation that's given by the court in voicing. One could make that argument. But that is not the argument that ultimately prevailed in voicing. What prevailed was a discussion of what criminal recklessness amounts to. And it does amount to a serious threat of violence by somebody who is consciously aware of the risk and proceeds nevertheless, an example such as shooting a gun into a crowd. That is criminal recklessness in Pennsylvania and just about everywhere else. That could include drunk driving. Drunk driving, it could include drunk driving, but that does not involve ñ there we have other decisions that say that doesn't involve violent force. So we're bouncing to different parts of the definition. Conscious disregard for the rights of others is a conscious act. That's true, but it may be unconscious as well. But under the categorical approach, for better or worse, we have to show that the crime we're talking about has as an element the use or threat of use of physical force against the person or another. The physical force issue, Johnson 2010 tells us, has to be violent. Well, on its face, the Pennsylvania robbery and aggravated assault statutes involve violence because they involve bodily injury, and Chapman tells us that amounts to physical force. So what we're left with is the question of what does use mean? And Voice E says use includes recklessness, and there's no reason not to extend that here as we believe the better reasoned opinions of other courts have done. So if I just take a minute to sum up, to break it down here, we have someone who indisputably has one prior act of felony for a drug trafficking conviction. He then has two F1 robberies, one F2 robbery, and one aggravated assault. For the aggravated assault, the only question here is the recklessness issue and the notion that because, again, somebody could starve a child to death, nobody has committed aggravated assault as a violent crime. For the second-degree robbery, again, it's the same thing, even though the statute on its face requires as an element the infliction of bodily injury. But the aggravated assault specifically uses the word recklessly, right? It does. In subsection 1, it's extreme recklessness, and in subsection 2, it's ordinary conscious disregard.